**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER GRANTING GOVERNMENT'S** |
| Plaintiff, | ) | **MOTION IN LIMINE** |
| | ) | |
| v. | ) | |
| | ) | |
| Melvin Troy Two Shields, | ) | |
| | ) | Case No. 1:06-cr-019 |
| Defendant. | ) | |

___

Before the Court is the Government's Motion in Limine filed on June 2, 2006. The Government seeks to exclude as hearsay certain non-verbal statements of the victim, Thomas BuffaloBoy, prior to his death. The Defendant filed a response in opposition to the motion. For the following reasons, the motion is granted.

**I.     BACKGROUND**

On January 21, 2006, at approximately 5:00 p.m., Thomas BuffaloBoy, driving a Chrysler van, pulled into the driveway at his sister Roselyn BuffaloBoy's residence in the New Sioux Village of Fort Yates, North Dakota. Thomas BuffaloBoy exited the vehicle and walked toward the home. He was spitting blood into a cup and his face was swollen. Roselyn asked Thomas what had happened, but he said he did not know. Roselyn believed Thomas was intoxicated. She then contacted the police and requested an ambulance.

At approximately 5:03 p.m., the Standing Rock Ambulance Service arrived at Roselyn BuffaloBoy's residence. Upon arrival, Thomas BuffaloBoy was alive and alert sitting on a chair. Emergency Medical Technicians (EMTs) inquired as to the origin of BuffaloBoy's injuries. BuffaloBoy responded that he could not remember. The EMTs detected the smell of alcohol.

BuffaloBoy's injuries would require a CT scan, and therefore he was taken directly to St. Alexius Hospital in Bismarck, North Dakota.[1] An EMT identified a dark purple bruise under BuffaloBoy's left cheek, his jaw pushed to the right, and a minor cut to the bridge of his nose. No other injuries were identifiable. During the transport, BuffaloBoy was alert and talking. Despite continued questioning, BuffaloBoy was still unable to remember the events which led to his injuries. As the ambulance neared St. Alexius Hospital, BuffaloBoy complained of breathing difficulties.

At approximately 6:16 p.m., the ambulance arrived at St. Alexius Hospital. BuffaloBoy remained conscious and talkative. He spoke of the pain, but did not discuss the events which led to his injuries, or who was responsible. Dr. Benedict Roller evaluated BuffaloBoy and determined that he had suffered a concussion and a mandibular fracture. The victim had a blood alcohol concentration of 0.389%. Dr. Roller listed BuffaloBoy's condition as "stable."

In the meantime, Kathleen BuffaloBoy, Thomas BuffaloBoy's sister-in-law, and her daughter Davita Ann Dunn arrived at the hospital. Upon seeing Thomas, Kathleen asked, "Oh my God, who did this to you?" Thomas BuffaloBoy did not respond, due in part to the fluid buildup in his mouth. Kathleen left the room for a short time, but reentered approximately ten (10) minutes later. Again, Kathleen asked Thomas BuffaloBoy if he knew who had caused his injuries. Thomas nodded indicating that he did know. Kathleen asked Thomas BuffaloBoy if the defendant, Melvin Troy Two Shields, had caused his injuries. Kathleen stated that Thomas shook his head in the negative. Davita Ann Dunn, also present, stated that Thomas did not really respond, but kind of shook his head. Kathleen then asked Thomas BuffaloBoy if he was protecting Two Shields, to which Thomas did not respond.

---

[1] The IHS Hospital in Fort Yates is not equipped for such scans.

2

Sometime later, Kelly Hurley, BuffaloBoy's niece, arrived at the hospital. Hurley too asked Thomas BuffaloBoy who had caused his injuries. BuffaloBoy apparently did not answer. Hurley proceeded to list several names of individuals, each time asking BuffaloBoy of their possible involvement. Again, he did not answer. BuffaloBoy was then taken to the operating room.

At approximately 9:15 p.m. on January 21, 2006, Dr. Michael Schmidt performed surgery on BuffaloBoy. Dr. Schmidt's initial notes indicate that BuffaloBoy tolerated the procedure well. However, on January 22, 2006, at approximately 5:04 a.m., BuffaloBoy suffered complications and died. The "Report of Death" showed that BuffaloBoy suffered from chronic obstructive pulmonary disease, arteriosclerotic cardiovascular disease, and cirrhosis. However, the stated cause of death was "complications of blunt force injuries of face."

On June 2, 2006, the Government filed the present motion seeking to exclude as hearsay Thomas BuffaloBoy's non-verbal statements made to Kathleen BuffaloBoy on the date of the accident. Specifically, Thomas' response to Kathleen's question of whether Melvin Two Shields had caused his injuries. Thomas BuffaloBoy responded to that question by shaking his head in the negative. The Government contends that BuffaloBoy's head shake is admissible hearsay. The defendant, Melvin Two Shields, has filed a response in asserting that BuffaloBoy's head shake, while in fact hearsay, is nevertheless admissible under the Federal Rules of Evidence.

## II.   **LEGAL DISCUSSION**

"'Hearsay'" is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." See Fed. R. Evid. 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is

intended by the person as an assertion." See Fed. R. Evid. 801(a). This definition encompasses gestures such as nodding and pointing in response to questioning. See e.g. United States v. Katsougrakis, 715 F.2d 769, 774 (2d Cir. 1983). As previously mentioned, the parties agree that Thomas BuffaloBoy's gestures are "hearsay" under the Federal Rules of Evidence. As a general rule, hearsay evidence is not admissible at trial. See Fed. R. Evid. 802. However, such evidence may be admitted under an exception to the rule against hearsay. Id. In this case, the Defendant pinpoints three possible exceptions: (1) statement under belief of impending death, (2) statement against interest, and (3) the residual exception. See Fed. R. Evid. 804(b)(2), (b)(4) and 807. Each exception will be addressed.

### A.     **STATEMENT UNDER BELIEF OF IMPENDING DEATH**[2]

The statement under belief of impending death exception, codified at Rule 804(b)(2) of the Federal Rules of Evidence, provides as follows:

> In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

The United States Supreme Court has held that "the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict. . . adherence to the truth. . . ." Mattox v. United States, 156 U.S. 237, 244 (1895). In order for a statement to trigger the so-called "dying declaration" exception,

---

[2] All exceptions under Rule 804 of the Federal Rules of Evidence require "unavailability" on the part of the declarant. See Fed. R. Evid. 804(b). Unavailability can be shown when the declarant is unable to testify at trial because of death. See Fed. R. Evid. 804(a)(4). Thomas BuffaloBoy, the declarant in this case, is unavailable for purposes of Rule 804. Thus, this element is satisfied for both the statement under belief of impending death and statement against interest exception.

>the declarant must have spoken without hope of recovery and in the shadow of impending death. . . . Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be 'a settled hopeless expectation' that death is near at hand, and what is said must have been spoken in the hush of its impending presence. . . . What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

Shepard v. United States, 290 U.S. 96, 99-100 (1933) (citations omitted). "A court may infer knowledge of the seriousness of a declarant's condition from the 'nature and extent of the wounds inflicted.'" United States v. Peppers, 302 F.3d 120, 137-38 (3d Cir. 2002) (quoting Maddox v. United States, 156 U.S. 237, 251 (1895)). The movant has the burden of proving such knowledge on behalf of the declarant. See David v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 235 (3d Cir. 1984).

The Defendant contends that Thomas BuffaloBoy's statement amounts to a dying declaration. In doing so, the Defendant points to BuffaloBoy's physical and mental condition at the time of the statement. The Government opposes the motion focusing on the lack of evidence regarding the victim's state of mind at the time of the statement.

Having carefully reviewed the entire record, the Court finds that the evidence does not support a finding that Thomas BuffaloBoy believed death was imminent at the time of his non-verbal statement or head gesture. The statement in question is BuffaloBoy's non-verbal response– he shook his head in the negative– to Kathleen BuffaloBoy's question of whether Melvin Two Shields caused his injuries. The record reveals that no one, including Thomas BuffaloBoy himself, his family members, or medical professionals, believed the injuries he sustained were life threatening. BuffaloBoy never expressed any such concern, nor did medical professionals. Despite his injuries, BuffaloBoy remained conscious throughout. After a thorough examination, Dr. Roller

listed BuffaloBoy's condition as stable. The subsequent surgery was performed without incident and BuffaloBoy was said to have tolerated the procedure well. His death the next morning was sudden and unexpected. The complications resulting in death occurred many hours after BuffaloBoy's non-verbal statement and could not be forecast. There is nothing in the record that supports a finding that Thomas BuffaloBoy believed death was imminent at the time the head gesture was made. Nor can such a finding be inferred by the nature of the wounds he sustained.

### B.    STATEMENT AGAINST INTEREST

The statement against interest exception, codified at Rule 804(b)(3) of the Federal Rules of Evidence, provides as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

It is well-established that "[a]t the moment the statement is made the declarant must believe that the statement is against the declarant's interest." Weinstein & Berger, Weinstein's Federal Evidence § 804.06[4][d][I]; see Roberts v. City of Troy, 773 F.2d 720, 725 (6th Cir. 1985) ("[h]earsay under the declaration against interest exception is unreliable unless the declarant is aware at the time of making the statement that it is against his interest.").

The Defendant contends that "[b]y affirming that Two Shields was not his attacker, BuffaloBoy rendered invalid any claim that he could have against Two Shields to recover damages

for his injury." In the words of Rule 804, Thomas "rendered invalid" any potential claim against Two Shields.

The evidence reveals that BuffaloBoy had a blood alcohol concentration of 0.389% at or near the time the non-verbal statement was made in the hospital. BuffaloBoy was described by medical professionals as incoherent, unintelligible, and unable to recall even simple facts such as his age. Based on the facts and circumstances presented, the Court expressly finds that BuffaloBoy was unable to appreciate that his statement may be against his pecuniary or proprietary interest and could hinder any potential claim against Two Shields. The record supports a finding that the non-verbal statement is unreliable and ill-suited to the statement against interest exception.

The Court would add that Rule 403 of the Federal Rules of Evidence also weighs in favor of excluding BuffaloBoy's non-verbal statement. Rule 403 allows for the exclusion of otherwise probative evidence, if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Under the unique facts and circumstances of this case, the Court finds that Rule 403 also calls for the exclusion of BuffaloBoy's statement.

### C. RESIDUAL EXCEPTION

The residual exception, codified at Rule 807 of the Federal Rules of Evidence, has been summarized by the Eighth Circuit as follows:

> In order for testimony to be admissible under Rule 807 there must be a showing that (1) the statement has equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; (4) the general purposes of the rules and the interests of justice will best be served by its admission; and (5) adequate notice must be given to the opposing party.

United States v. Peneaux, 432 F.3d 882, 891 (8th Cir. 2005) (citing Fed. R. Evid. 807; United States v. Balfany, 965 F.2d 575, 581-82 (8th Cir. 1992)).[3] "The residual exception 'accommodates ad hoc instances in which a statement not otherwise falling within a recognized hearsay exception might nevertheless be sufficiently reliable to be admissible at trial.'" United States v. Turning Bear, 357 F.3d 730, 737 (8th Cir. 2004) (quoting Idaho v. Wright, 497 U.S. 805, 817 (1990)).

Several of the requirements can be dispensed with rather quickly.  It is undisputed that BuffaloBoy's statement is offered as evidence of a material fact, and that adequate notice of its use was given to the Government.  Further, there seems little doubt that BuffaloBoy's statement is more probative on the issue of Two Shields' involvement than any other evidence that can be procured through reasonable efforts.

The Government's primary dissension concerning the admission of BuffaloBoy's statement under Rule 807 is a perceived lack of trustworthiness.  To be admissible under Rule 807, the proffered statement must have circumstantial guarantees of trustworthiness commensurate to the other hearsay exceptions.  "In assessing the qualitative degree of trustworthiness of a particular statement, courts should inquire into the reliability of and necessity for the statement." United States v. Earls, 113 F.3d 796, 800 (8th Cir. 1997) (citing United States v. Carlson, 547 F.2d 1346, 1354

---

[3]Rule 807 of the Federal Rules of Evidence reads in full as follows:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

(8th Cir. 1976)).  "[A]s the trustworthiness of a statement increases, the justification for excluding it decreases."  United States v. Peneaux, 432 F.3d 882, 892 (8th Cir. 2005) (citations omitted).

The Government has identified several facts which significantly undermine the trustworthiness of BuffaloBoy's statement.  First, BuffaloBoy was highly intoxicated at the time of the non-verbal statement.  The undisputed evidence in the medical records reveals that BuffaloBoy had a blood alcohol concentration of  0.389% at or near the time of the conversation between himself and Kathleen BuffaloBoy.  Under North Dakota law, an individual is presumed to be under the influence of alcohol with a blood alcohol concentration of 0.08%.  See N.D. Cent. Code § 39-08-01(1)(a).  The victim's blood alcohol concentration near the time of the non-verbal statement was nearly five (5) times the legal limit.

Second, BuffaloBoy repeatedly told other individuals that he did not remember the events which led up to his injury.  As BuffaloBoy pulled into the driveway at Roselyn BuffaloBoy's residence, she immediately asked him what had happened.  BuffaloBoy said that he did not know.  A short time later, on the way to the hospital, EMT's asked BuffaloBoy multiple times what had happened, but he could not remember.  In fact, EMT's stated that BuffaloBoy was so confused that he was unable to correctly recall his own age.

Third, Dr. Roller's emergency room notes indicate that BuffaloBoy was "unintelligible" and "not coherent enough to understand."  This evaluation was completed at or near the time of the discussion between Kathleen BuffaloBoy and the decedent.

Finally, Thomas BuffaloBoy did not verbally respond to Kathleen BuffaloBoy's question.  Kathleen stated that BuffaloBoy shook his head in the negative.  Davita Ann Dunn, also present, stated that Thomas BuffaloBoy did not really respond, but kind of shook his head.  There is no

9

question that a head gesture made by a grossly intoxicated and severely injured person lying in a hospital bed is susceptible to a multitude of interpretations and/or misinterpretations. A head gesture, under the facts and circumstances presented in this case, lacks trustworthiness.

Having carefully reviewed the entire record, the Court expressly finds that Thomas BuffaloBoy's statement lacks the equivalent guarantees of trustworthiness exhibited by other hearsay exceptions. BuffaloBoy's physical and mental health at the time of the statement is seriously in question. The Court finds that his blood alcohol concentration, coupled with his severe head injury, calls into serious question the veracity of the non-verbal statement. BuffaloBoy was unable to recall even his own age. To that end, Dr. Roller indicated that Thomas BuffaloBoy was incoherent and unintelligible. Further, BuffaloBoy's statement to Kathleen BuffaloBoy directly contradicts previous verbal statements he had made to family members and medical professionals. Finally, BuffaloBoy's statement is merely a head gesture. By their very nature, head gestures are far less clear than verbal or hand written responses. A head gesture is susceptible to multiple interpretations or misinterpretations, as exhibited by the statements of Kathleen BuffaloBoy and Davita Ann Dunn. In summary, Thomas BuffaloBoy's statement, in light of all the evidence presented, lacks the necessary guarantees of trustworthiness required to be admissible under the residual exception to the rule against hearsay.

### III.   CONCLUSION

For the reasons set forth above, the Government's Motion in Limine is **GRANTED**. (Docket No. 28). The Defendant will not be permitted to inquire about Kathleen BuffaloBoy's questions to Thomas BuffaloBoy on the date of the incident concerning Melvin Two Shield's involvement, or BuffaloBoy's subsequent non-verbal responses or head gestures to that question.

**IT IS SO ORDERED.**

Dated this 27th day of June, 2006.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court