**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DISMISSING DEFENDANT'S** |
| | ) | **MOTION FOR HABEAS CORPUS** |
| vs. | ) | **RELIEF UNDER 28 U.S.C. § 2255** |
| | ) | |
| Melvin Troy Two Shields, | ) | |
| | ) | Case No. 1:06-cr-019 |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Melvin Troy Two Shields, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:08-cv-081 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on September 22, 2008. <u>See</u> Docket No. 78. The Court reviewed the motion and on September 23, 2008, ordered the Government to file a response. <u>See</u> Docket No. 80. The Government filed a response in opposition to the motion on November 19, 2008. <u>See</u> Docket No. 86. On February 12, 2009, the Defendant moved for leave to file a supplemental memorandum in support of the Section 2255 habeas motion. <u>See</u> Docket No. 95. The Court granted the motion, with certain restrictions, and gave the Defendant until March 27, 2009, to submit an appropriate filing. <u>See</u> Docket No. 97. The Defendant filed a "Supplement to § 2255 in Support of Claims" on April 3, 2009. <u>See</u> Docket No. 98. The Court dismisses the motion for the reasons set forth below.

I.      **BACKGROUND**

On February 15, 2006, the defendant, Melvin Troy Two Shields, was indicted on two counts. See Docket No. 11.  Count one charged Two Shields with the second degree murder of Thomas Buffalo Boy on or about January 21, 2006.  Count two charged Two Shields with the assault of Thomas Buffalo Boy resulting in serious bodily injury.

On July 13, 2006, a jury found Two Shields guilty of both counts.  On October 4, 2006, the Court sentenced Two Shields to 360 months of imprisonment on count one and 120 months of imprisonment on count two, to run concurrent.  Two Shields appealed and the Eighth Circuit Court of Appeals affirmed the conviction and sentence.  See Docket No. 60;  United States v. Two Shields, 497 F.3d 789 (8th Cir. 2007).

On September 22, 2008, Two Shields filed a habeas corpus motion pursuant to 28 U.S.C. § 2255 based on defense counsel's alleged ineffective assistance of counsel.  See Docket No. 78.  Two Shields alleges defense counsel was ineffective for the following reasons:  (1) failure to establish that he had asked for an attorney before he was interviewed by law enforcement officers about Thomas Buffalo Boy's death, and that he was coerced by law enforcement officers into confessing; (2) failure to seek a new trial by "developing evidence refuting denial of exculpatory statement by victim, and for inadmissable testimony;" (3) failure to establish that Thomas Buffalo Boy's death was caused by the hospital; and (4) failure to more thoroughly investigate other suspects and exculpatory evidence.  See Docket No. 78.

## II.   **STANDARD OF REVIEW**

28 U.S.C. § 2255 authorizes a challenge by "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."  "A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a 'fundamental defect' resulting in a 'complete miscarriage of justice.'"  United States v. Gianakos, 2007 WL 3124686, at *4 (D.N.D. Oct. 23, 2007) (quoting Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962)).  An ineffective assistance of counsel claim is properly raised in a 28 U.S.C. § 2255 action.  See United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006).  To be eligible for habeas corpus relief on an ineffective assistance of counsel claim, the defendant bears the burden of satisfying the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984).

The defendant must first show counsel's performance was deficient.  Strickland, 466 U.S. at 687.   Counsel's performance is deficient when it falls below an objective standard of reasonableness.  Id. at 687-88; see Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007).  To determine whether defense counsel satisfied the reasonableness standard, a court must "assess reasonableness on all the facts of the particular case," "view the facts as they existed at the time of counsel's conduct" and not in hindsight, and "evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing" of the prosecution's case.  See Marcrum, 509 F.3d at 502.  Because of the inherent difficulties in evaluating defense counsel's conduct at the time of performance, there is a strong presumption that counsel's performance is reasonable and "might be considered sound trial strategy."  Strickland, 466 U.S. at 689.

The defendant must then show counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. Prejudice is rarely presumed in ineffective assistance of counsel cases. Prejudice is presumed "when there has been a complete denial of counsel or a denial of counsel at a critical stage, when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' or when even competent counsel could not be expected to be of assistance given the circumstances." Malcom v. Houston, 518 F.3d 624, 627 (8th Cir. 2008) (quoting Bell v. Cone, 535 U.S. 685, 696 (2002)).

Two Shields has failed to allege or present any conduct by defense counsel that would give rise to a presumption of prejudice. Therefore, to succeed on the ineffective assistance of counsel claims, Two Shields must show counsel's performance prejudiced his defense. "A showing of prejudice requires a determination by the court that 'there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" United States v. White, 341 F.3d 673, 677 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694).

The standard set forth in Strickland requires that judicial scrutiny of defense counsel's performance be highly deferential. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

4

## III.   LEGAL DISCUSSION

The threshold issues before the Court are whether defense counsel's performance was deficient and, if so, whether such deficiency prejudiced Two Shields's defense at trial.

### A.   DEFENSE COUNSEL'S ALLEGED FAILURE TO SUPPRESS THE CONFESSION

#### 1)   VIOLATIONS OF MIRANDA

Two Shields first contends that defense counsel was ineffective for failing to establish that he had requested an attorney before he was interviewed by law enforcement officers about Thomas Buffalo Boy's death, and that he was coerced by law enforcement officers into confessing that he had assaulted Buffalo Boy. Two Shields argues the following to support this claim: "Coercion was admitted to by Investigator David Lawrence immediately after he got off the stand. There was an immediate sidebar. There was no audio recordings made of interview or written statements. Trial Testimony." See Docket No. 78 (errors in original). Two Shields also contends that defense counsel was ineffective for not investigating his possible mental health issues and for not retaining a mental health expert at trial.

The record reveals that Two Shields was interviewed on two separate occasions by law enforcement officers concerning Thomas Buffalo Boy's death. On January 22, 2006, Two Shields denied knowing what had happened to Buffalo Boy and did not recall being at Buffalo Boy's residence on January 21, 2006. On January 23, 2006, Two Shields admitted that he struck Buffalo Boy while he was sitting in a chair. Two Shields also told the officers that after Buffalo Boy fell to the floor, he got on top of Buffalo Boy and struck him two or three more times.

Two Shields contends that defense counsel was deficient for failing to move to suppress his confession because his *Miranda* rights were violated when he was interviewed after having requested an attorney. The record reveals that Two Shields was twice advised of his *Miranda* rights and twice agreed to answer questions without an attorney present. See Docket Nos. 86-10 and 86-11. Two Shields admits he signed the forms that set forth his *Miranda* rights but argues he "then unambiguously invoked his Miranda Rights by stating that he would sign the form, but he would not talk with the agents without a lawyer." See Docket No. 98. Two Shields has failed to present any evidence he had informed defense counsel of a possible *Miranda* violation. It is unreasonable to expect that defense counsel would have moved to suppress Two Shields's confession when Two Shields was advised of his *Miranda* rights on two separate occasions, agreed to answer questions without an attorney present, and had never previously asserted that he had requested an attorney before being questioned. Viewing the facts as they existed at the time, defense counsel was not deficient because there was no indication in the record, nor from Two Shields, that the confession was made in violation of his *Miranda* rights.

Even if defense counsel was deficient for failing to move to suppress Two Shields's confession based on a violation of his *Miranda* rights, Two Shields has failed to show how his defense was prejudiced at trial. Two Shields must establish that his suppression claim is "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Two Shields has wholly failed to demonstrate that the suppression claim is meritorious or that the verdict would have been any different absent the excludable evidence.

6

On two separate occasions, Two Shields was given the opportunity to invoke his *Miranda* rights and refuse to speak to the law enforcement officers.  Instead, on two separate occasions, Two Shields signed forms that read:  "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  See Docket Nos. 86-10 and 86-11.  Further, Two Shields has failed to demonstrate any reasonable probability the verdict would have been different absent his confession.  The Court finds there was more than sufficient evidence at trial to warrant a conviction on both counts.


### 2)      COERCION BY LAW ENFORCEMENT

Two Shields next contends defense counsel was deficient in failing to move to suppress his confessions because they were the result of coercion by the law enforcement officers.  Coercive police activity is a requisite to a finding that a defendant's confession is involuntary.  Colorado v. Connelly, 479 U.S. 157, 167 (1986).  "A confession is voluntary if it is 'the product of an essentially free and unconstrained choice by its maker.'"  United States v. New, 491 F.3d 369, 374 (8th Cir. 2007) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)).  A confession is involuntary if, based on the totality of the circumstances, it is obtained from sufficient pressure to overbear a defendant's will.  United States v. Carroll, 207 F.3d 465, 472 (8th Cir. 2000); United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (a statement is involuntary if obtained "'by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination'") (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)).

Two Shields's sole argument to support the coercion claim is that Agent David Lawrence of the Bureau of Indian Affairs allegedly admitted to coercing Two Shields <u>after</u> Agent Lawrence had testified at the trial in July 2006.  However, Two Shields has failed to present any evidence, nor has the Court found any evidence in the transcript or elsewhere, to support this unfounded allegation.  Further, Two Shields has failed to present any evidence that he was the victim of coercive police conduct.

Two Shields testified at trial that the law enforcement officers' badgering caused him to tell the officers what they wanted to hear, namely, that he had struck and killed Buffalo Boy.  <u>See</u> Docket No. 58-3, p. 214.  However, during the interviews the law enforcement officers specifically asked Two Shields if he was simply telling them what he thought they wanted to hear.  <u>See</u> Docket No. 58-3, p. 116.  The officers specifically informed Two Shields he should not confess if he did not commit the crime.  <u>See</u> Docket No. 58-3, p. 117.  This line of questioning does not comport with coercion.  The record fails to reveal any evidence of threats, violence, coercion, or promises which caused Two Shields's will to be overborne.  Thus, there is absolutely no evidence in the record that Two Shields's confession was involuntary.

The Court finds, based on a review of the entire trial transcript, that even if badgering occurred during the interviews of Two Shields, it was not unreasonable for defense counsel to determine that the method of interrogation did not amount to coercion sufficient to overbear Two Shields's will and which would warrant filing a motion to suppress.  The Court will not secondguess defense counsel's trial strategy.  Viewing the facts as they existed at the time, the Court finds that defense counsel was not deficient in failing to move to suppress Two Shields's confession under the

circumstances because there was no credible evidence that the confession was the result of impermissible coercion by the investigating officers.

Even if defense counsel was deficient in failing to move to suppress Two Shields's confessions based on coercion, Two Shields has wholly failed to show his defense was prejudiced. Two Shields must show his suppression claim is "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman, 477 U.S. at 375. The Court finds that a suppression claim based solely on an alleged admission of misconduct made by a law enforcement officer after the officer had completed his testimony at trial and left the stand, and which is nowhere contained in the trial transcript, lacks any merit. Further, Two Shields has failed to demonstrate that the verdict would have been different absent the confession. Suffice it to say that there was more than sufficient evidence to support the convictions.

Two Shields contends in the supplemental brief filed that defense counsel was deficient for allegedly failing to investigate Two Shields's mental health issues and for not retaining a mental health expert to testify at trial. Two Shields argues he did not have the assistance of any mental health experts, namely a social worker, psychologist, or psychiatrist, despite the fact that defense counsel was "confronted repeatedly with indications of [Two Shields's] possible mental impairment." See Docket No. 98 (errors in original). Further, "counsel ignored these red flags and failed to investigate for mental health issues, or evidence of any mitigating circumstances that would have warranted introducing such evidence." See Docket No. 98.

Two Shields has failed to present any evidence that indicates he was, or is, suffering from any mental impairment. Two Shields has failed to explain what the "indications" or "red flags" were

9

to demonstrate a mental impairment.  Therefore, it is unreasonable to expect that defense counsel

would have taken the steps Two Shields now suggests.  The Court finds that defense counsel was

not deficient in failing to address Two Shields's alleged mental health impairment and, even if

counsel was deficient, there is no evidence the outcome of the trial would have been any different.

 The Court finds that Two Shields has failed to demonstrate that defense counsel's

performance was deficient or, if counsel was deficient, that the defense was prejudiced.  Therefore,

the first ineffective assistance of counsel claim fails.


**B.  DEFENSE COUNSEL'S ALLEGED FAILURE TO MOVE FOR A NEW TRIAL**

**1)  FAILURE TO PRESENT EXCULPATORY EVIDENCE**

 Two Shields's second claim in the habeas petition is that defense counsel was ineffective

"for not appealing for new trial by developing evidence refuting denial of exculpatory statement by

victim, and for inadmissable testimony."  See Docket No. 78.  Two Shields argues the following in

support of this claim:

> [Thomas Buffalo Boy] drove himself to his sisters house after assault, Buffaloboy
> communicated to at least five people besides Kathleen Buffaloboy, to whom he made
> the exculpatory communication.  He communicated by head nods, pointed finger,
> writing and limited speech.  All said that he was "alert, conscious, communicating
> and even joking."  See discovery pages 15 Kathleen Buffaloboy, 20 EMT Joey
> VanderVleit, 22 EMT Josh Eldridge, 48 Dr. Honeycutt, 86 Davita Dunn, 179 Kelly
> Hurley and 184.  Inadmissalble Trial testimony of April Callous Leg.

See Docket No. 78 (errors in original).  Two Shields also contends defense counsel was ineffective

at the appellate level for "not raising mistrial Motion on appeal."  See Docket No. 78.

 The record reveals that Thomas Buffalo Boy's sister-in-law, Kathleen Buffalo Boy, informed

a law enforcement officer that Thomas Buffalo Boy, while in the hospital, nodded when she asked

him if he knew who had injured him, and Thomas Buffalo Boy then shook his head in the negative when she asked him whether he had been assaulted by Melvin Two Shields.  Two Shields argues that five other individuals – Joey VanderVleit, Josh Eldridge, Dr. D'Arcy Honeycutt, Davita Dunn, and Kelly Hurley – witnessed Thomas Buffalo Boy's "exculpatory communication."  A careful review of the record reveals that neither VanderVleit, Eldridge, or Dr. Honeycutt were witnesses to the alleged exculpatory communication.  Davita Dunn was present when Kathleen Buffalo Boy talked to Thomas Buffalo Boy, but Dunn did not communicate with him.  Kelly Hurley asked Thomas Buffalo Boy if he knew who injured him but Buffalo Boy did not answer.  Hurley never asked Buffalo Boy whether Two Shields had caused his injuries.  The information Dunn and Hurley were capable of providing at trial was, at best, the same information that Kathleen Buffalo Boy could provide.

Prior to trial, the Government filed a motion in limine to exclude evidence of Thomas Buffalo Boy's non-verbal communication, i.e., head shake, in response to Kathleen Buffalo Boy's question of whether Two Shields had injured Buffalo Boy.  See Docket No. 28.  The Court granted the motion in limine, finding that Thomas Buffalo Boy's head shake was inadmissible hearsay because it was not made under the belief of impending death, it was not a statement against interest, and the residual exception to the hearsay rule did not apply.  See Docket No. 31; United States v. Two Shields, 435 F. Supp. 2d 973 (D.N.D. 2006).  Two Shields's counsel was not permitted to inquire about Kathleen Buffalo Boy's question to Thomas Buffalo Boy, or Thomas Buffalo Boy's non-verbal response.  After Two Shields's conviction, defense counsel filed a motion for a new trial and argued the Court had erred in refusing to admit the disputed evidence.  See Docket No. 45.  The Court denied the motion.  See Docket No. 48.  Two Shields, with the continued assistance of defense

11

counsel, then appealed to the circuit. The Eighth Circuit Court of Appeals affirmed Two Shields's conviction and found that the Court did not abuse its discretion in refusing to admit Thomas Buffalo Boy's non-verbal communication in the hospital, and in denying the motion for a new trial. See Docket No. 60; Two Shields, 497 F.3d 789. The Eighth Circuit specifically addressed each of the Court's rulings as to the exclusion of the victim's non-verbal gesture of shaking his head when asked whether Two Shields had caused his injuries. The Eighth Circuit unanimously concluded that the gesture was not admissible under any of the hearsay exceptions.

Two Shields contends defense counsel was deficient for failing to present evidence at trial that Thomas Buffalo Boy communicated non-verbally (head shake) to show that Two Shields had not assaulted him. Two Shields also contends defense counsel was deficient for failing to move for a new trial based on the fact this challenged evidence was never admitted at trial.

It is clear from the record that defense counsel planned to present evidence of Thomas Buffalo Boy's in-hospital, non-verbal communication through the testimony of Kathleen Buffalo Boy. When the Government filed a motion in limine to exclude the non-verbal gesture, Two Shields's counsel filed a response in which the issue was thoroughly and competently briefed and argued that the non-verbal head shake evidence should be admitted at trial. See Docket No. 29. Contrary to Two Shields's claim, defense counsel filed a timely motion for a new trial and again argued the Court erred in its exclusion of Thomas Buffalo Boy's non-verbal gesture. After the Court denied the motion for a new trial, defense counsel appealed to the Eighth Circuit and counsel again argued that Thomas Buffalo Boy's non-verbal gesture/head shake was improperly excluded, and that the district court abused its discretion in denying the motion for a new trial. It is incongruous to claim defense counsel was deficient for failing to present evidence of Thomas Buffalo Boy's non-

12

verbal gesture when every reasonable effort was undertaken and exhausted by defense counsel to present such evidence at trial. Defense counsel filed a motion for a new trial and continued to pursue such claims on appeal. Viewing the facts as they existed at the time, the Court finds that defense counsel was not deficient and exercised reasonable trial strategy in attempting to introduce Thomas Buffalo Boy's non-verbal gesture as exculpatory evidence at trial. Neither this Court nor the Eighth Circuit Court of Appeals concluded that such evidence was admissible.

Even if defense counsel was deficient, Two Shields has failed to show that his defense was prejudiced. The Eighth Circuit Court of Appeals specifically held that this Court properly excluded Thomas Buffalo Boy's non-verbal gesture as inadmissible hearsay evidence, and the motion for a new trial was properly denied. Regardless of defense counsel's performance, Thomas Buffalo Boy's non-verbal gesture would never have been admitted at trial. Further, even if Thomas Buffalo Boy's in-hospital head gesture had been admitted, the jury was presented with more than sufficient evidence of Two Shields's guilt based largely on Two Shields's confession, so the outcome of the trial would not have been different.

### 2) FAILURE TO MOVE TO EXCLUDE INADMISSIBLE TESTIMONY

Two Shields also argues that defense counsel was deficient for failing to move to exclude the trial testimony of April Callous Leg. However, Two Shields has failed to provide any explanation nor any factual or legal basis for this claim. The Government speculates this claim is based on Callous Leg's trial testimony where she mentioned a scheduled polygraph examination when she returned from South Dakota. See Docket No. 58-3, p. 75. Defense counsel promptly moved for a mistrial based on Callous Leg's testimony. See Docket No. 58-3, p. 77. Defense

13

counsel acted immediately to address the testimony.  The fact the Court denied the motion for a

mistrial does not in any manner indicate that defense counsel was deficient.  Two Shields has failed

to meet his burden to show that defense counsel was deficient.  There is no evidence that Two

Shields's defense at trial was prejudiced.  There was more than sufficient evidence to convict Two

Shields on both counts.  The passing reference to a polygraph examination did not in any manner

affect the outcome of the trial.

     The Court finds that Two Shields has failed to demonstrate that defense counsel's

performance was deficient or, if counsel was deficient, that his defense was prejudiced at trial.

Therefore, the second ineffective assistance of counsel claim fails.

### C.    DEFENSE COUNSEL'S FAILURE TO PRESENT EVIDENCE ON CAUSE OF DEATH BEING ATTRIBUTABLE TO HOSPITAL

     Two Shields argues that defense counsel was ineffective "for not establishing that Thomas

Buffaloboy's death was caused by the Hospital."  See Docket No. 78 (errors in original).  Two

Shields argues the following:

> Trial testimony specifically (but not limited to) Dr. Schmidt's testimony.  Video of
> air obstruction right before Buffaloboy's death, not introduced by trial Attorney, Jury
> should have been instructed on lesser included offense to allow jury to decide on
> cause of death where effective assistance would have raised reasonable question of
> issue.  Page 58 of discovery.

See Docket No. 78 (errors in original).

     At approximately 5:00 p.m. on January 21, 2006, Thomas Buffalo Boy drove to his sister's

residence in Fort Yates, North Dakota.  His jaw was severely swollen and Buffalo Boy was bleeding

profusely from his mouth.  Buffalo Boy was unable to respond to his sister's questions about what

had happened and he was transported to St. Alexius Hospital in Bismarck, North Dakota.  Buffalo

Boy was conscious after arriving at the hospital but he had a blood alcohol concentration of 0.389%. At approximately 9:15 p.m. on January 21, 2006, Dr. Michael Schmidt performed surgery on Buffalo Boy. The medical records reveal he tolerated the procedure well. However, Buffalo Boy began having difficulty breathing at approximately 4:00 a.m. on January 22, 2006, despite having a tracheostomy tube in his airway. The treating physicians attempted to insert a suction catheter into Buffalo Boy's tracheostomy tube to relieve his breathing problems, but were unsuccessful. The treating physicians next inserted a bronchoscope – a camera device – into the tracheostomy tube. The bronchoscope revealed excess blood in the tube. The tracheostomy tube was then removed and a new tube was inserted. However, Buffalo Boy suffered complications and died at approximately 5:04 a.m. on January 22, 2006. The medical examiner testified at trial that Buffalo Boy died from complications resulting from blunt force trauma and injuries to the face.

Two Shields contends that defense counsel was deficient for failing to establish that St. Alexius Hospital caused Thomas Buffalo Boy's death and for failing to introduce a video recording of Buffalo Boy's air obstruction before his death. He also references the testimony of Dr. Michael Schmidt.

"In the absence of a statute expressly dealing with the effect of the medical treatment of an alleged homicide victim's wound, an accused who has inflicted upon the victim an injury calculated to destroy or endanger life cannot exonerate himself . . . and . . . avoid the natural consequences flowing from the injury by showing that the victim's life might have been saved by more skillful medical treatment." 40 Am. Jur. 2d Homicide § 18; see United States v. Guillette, 547 F.2d 743, 749 (2d Cir. 1976) (holding that when intervening events such as negligent medical treatment "are foreseeable and naturally result from a perpetrator's criminal conduct, the law considers the chain

of legal causation unbroken and holds the perpetrator criminally responsible for the resulting harm"). "The negligent treatment or neglect of an injury will not excuse a wrongdoer unless the treatment or neglect was the sole cause of death."  40 Am. Jur. 2d Homicide § 18; see Garcia v. Mathes, 474 F.3d 1014, 1017-18 (8th Cir. 2007) (applying Iowa law and holding that "for an intervening act to relieve a defendant of criminal responsibility for homicide, the intervening act must be the *sole* proximate cause of death") (emphasis in original) (quotation omitted).

The record clearly reveals that the professional staff at St. Alexius Hospital did everything possible to save Thomas Buffalo Boy's life.  The injuries inflicted on Buffalo Boy's face caused significant bleeding and swelling in the soft tissue area of his mouth and around the airway, which severely compromised his ability to breathe.  The hospital staff attempted numerous times to open Buffalo Boy's airway to enable him to breathe.  However, as the bronchoscope revealed, there was excess blood in the tracheostomy tube.  Two Shields has failed to present any competent evidence to support the claim that Buffalo Boy's death was proximately caused by the staff at St. Alexius Hospital.  It is clear that Buffalo Boy suffered serious injuries from the assault and those injuries led to his resulting death.  The record is devoid of any evidence to support a claim that the hospital was responsible in any manner for Buffalo Boy's death, let alone the sole cause of his death.  Viewing the facts as they existed at the time, the Court finds that defense counsel was not deficient.

The Court further finds that Two Shields's references to a video recording and the testimony of Dr. Michael Schmidt as being supportive of his claim of medical negligence are devoid of merit. A video recording of Thomas Buffalo Boy's airway obstruction was not made by the hospital staff and the record fails to support Two Shields's claims to the contrary.   Therefore, defense counsel cannot be found deficient for failing to introduce such evidence.  Dr. Schmidt did not testify at trial.

16

It is not clear whether Two Shields contends that defense counsel was deficient for failing to call Dr. Schmidt as a witness.  Nevertheless, Two Shields has failed to present any evidence that Dr. Schmidt's testimony was relevant or necessary in this case.  The Court will not second-guess defense counsel's trial strategy.

Even if defense counsel was deficient for not establishing, or failing to attempt to establish, that Thomas Buffalo Boy's death was caused by the medical negligence of the hospital staff, Two Shields has wholly failed to show that his defense was prejudiced.  The Court finds that the outcome of the trial would not have been affected in any manner by such evidence because there was overwhelming evidence that the professional staff at St. Alexius Hospital acted appropriately and in conformance with standards of care in its efforts to save Buffalo Boy.  Further, there was also overwhelming evidence that the cause of death was directly attributable to complications from the multiple blunt force trauma injuries to the victim's face.

### D.      DEFENSE COUNSEL'S ALLEGED FAILURE TO REQUEST JURY INSTRUCTIONS ON A LESSER-INCLUDED OFFENSE

Two Shields also contends defense counsel was ineffective for failing to request a lesser-included offense instruction on the cause of death.  At trial, the Court declined to give a lesser-included offense instruction on voluntary manslaughter and involuntary manslaughter after finding there was insufficient evidence to warrant such instructions.  It is not clear whether Two Shields alleges that defense counsel should have requested lesser-included offense instructions on voluntary manslaughter and involuntary manslaughter, or that defense counsel should have requested different instructions.

17

> A defendant is entitled to a lesser included offense instruction when:
>
> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

United States v. Herron, 539 F.3d 881, 886-87 (8th Cir. 2008).  Two Shields has failed to show that he was entitled to a lesser-included offense instruction based on the five factors set forth above.  The Court declines to secondguess defense counsel's trial strategy as it pertains to the issue of lesser-included offense instructions.  Two Shields has wholly failed to present any evidence which indicates that lesser-included offense instructions were warranted or what those proposed instructions should have been.  Viewing the facts as they existed at the time, defense counsel was not deficient for allegedly failing to request lesser-included offense instructions on voluntary manslaughter and involuntary manslaughter.

Even if defense counsel was in some manner deficient, Two Shields has failed to demonstrate that his defense was prejudiced.  Regardless of whether defense counsel requested lesser-included offense instructions, after carefully reviewing the evidence and Two Shields's testimony at trial, the Court determined that instructions on the lesser offenses of voluntary manslaughter and involuntary manslaughter were not warranted by the evidence.  Two Shields has wholly failed to show that different jury instructions would have ever been granted based on the factors the Court must analyze to determine whether instructions on lesser-included offenses are warranted.  Therefore, the trial outcome would have been the same whether defense counsel had requested any lesser-included offense instructions or not.

18

The Court finds that Two Shields has failed to show that defense counsel's performance was deficient, or if counsel was deficient, that the defense was prejudiced. Therefore, the third ineffective assistance of counsel claim fails.

### E.   DEFENSE COUNSEL'S ALLEGED FAILURE TO INVESTIGATE OTHER MURDER SUSPECTS

Finally, Two Shields contends that defense counsel failed to have "other suspects more thoroughly investigated, or investigating and establishing exculpatory evidence for trial." See Docket No. 78. Two Shields argues the following:

> Witnesses put other people at scene of crime other than Mr. Two Shields including one, Shelly White, that was put at scene during time of assault. No expert testimony about blood spatter in spite of lacerations on face (P.22 of discovery) and large quantity of blood in mouth. No expert testimony on force required for such extreme trama to victim and, medical opionions of probable weapon such as a bat. Emergency room pages 5 and 6, discovery pages 20, 48, 86 and 184. No blood on Two Shields. No refuting testimony on probable damage to hands. No DNA samples of other suspects. Documented lack of reasources for Public Defenders Office.

See Docket No. 78 (errors in original). Two Shields contends that defense counsel was ineffective for failing to investigate other possible murder suspects.

Two Shields essentially contends that defense counsel was deficient for failing to investigate other suspects, namely Shelly White, Arthur Silk, Jr., and April Callous Leg. At trial, Two Shields's counsel called Shelly White as a witness. Defense counsel questioned White about an alleged statement she had made to the effect that she ought to hit Thomas Buffalo Boy with a baseball bat. See Docket No. 58-3, p. 151. White denied ever making such a statement. Defense counsel also confronted White with an inconsistency between her trial testimony and a pretrial statement. See Docket No. 58-3, pp. 148-49. At trial, White testified that Buffalo Boy was not drunk at the time

19

she left his residence at 1:00 p.m.  However, White told law enforcement officers that Buffalo Boy was drunk when she left his residence.  Defense counsel then called Amanda Martin, who placed Shelly White at Buffalo Boy's residence after 1:00 p.m., and Delores Defender, who saw White walking from Buffalo Boy's residence after 4:30 p.m. with something in her hand.  See Docket No. 58-3, pp. 162-63, 166-67.  Defense counsel's questioning forced the Government to cross-examine Shelly White and to specifically ask White whether she had assaulted Buffalo Boy, which she denied.  See Docket No. 58-3, p. 151.

Defense counsel also questioned Arthur Silk, Jr. at trial about why he traveled to South Dakota shortly after January 21, 2006 (the day of the murder), and why he did not attend Thomas Buffalo Boy's funeral.  See Docket No. 58-2, pp. 68-9.  Defense counsel attempted to advance a theory that Silk had left North Dakota to "let things cool off" because other persons thought Silk had killed Buffalo Boy.  Defense counsel's questioning forced the Government to specifically ask Silk if he had anything to do with Buffalo Boy's death, which he denied.  See Docket No. 58-2, p. 68.

Defense counsel questioned April Callous Leg about a past relationship she may have had with Buffalo Boy and whether Arthur Silk, her current boyfriend, was jealous of Buffalo Boy.  See Docket No. 58-3, p. 73.  Defense counsel's questioning of Callous Leg forced the Government to examine her and to specifically ask her if she had anything to do with the death of Buffalo Boy.  See Docket No. 58-3, p. 76.  Defense counsel also questioned Callous Leg about why she had accompanied Arthur Silk to South Dakota and why she did not attend Buffalo Boy's funeral even though they were close friends.  See Docket No. 58-3, pp. 74-5.  The examination of these witnesses by defense counsel was clearly intended to paint other persons as possible murder suspects, and to plant the seed of reasonable doubt in the minds of the jurors.

It is clear from the record that defense counsel had fully investigated Shelly White, Arthur Silk, Jr., and April Callous Leg as potential murder suspects prior to trial. Defense counsel knew Shelly White had made a previous statement about hitting Thomas Buffalo Boy with a bat. Defense counsel found witnesses who contradicted White's story about her whereabouts on the day of the murder. Defense counsel also knew Arthur Silk and April Callous Leg left North Dakota soon after the murder and traveled to South Dakota to "let things cool off" even though they had been close friends with Buffalo Boy. Defense counsel used this information in an attempt to implicate White, Silk, and Callous Leg, and did so effectively which required the Government to specifically question all three individuals and ask whether they had anything to do with the assault and murder of Buffalo Boy. Defense counsel undertook reasonable trial strategy by thoroughly investigating and questioning these three individuals. Viewing the facts as they existed at the time, defense counsel was not deficient and the Court will not secondguess the trial strategy simply because it did not result in a favorable verdict for Two Shields.

Further, even if defense counsel was deficient for allegedly failing to adequately investigate other possible suspects, Two Shields has failed to show that his defense was prejudiced. Two Shields has failed to show what a more thorough investigation would have revealed. He has not provided any evidence that Shelly White, Arthur Silk, or April Callous Leg ever injured Buffalo Boy on January 21, 2006. The Court finds there was more than sufficient evidence to convict Two Shields on both counts, namely his confession, and there was a complete lack of any evidence to implicate any other possible suspects for the assault and murder. Therefore, Two Shields has failed to show that the outcome of the trial would have been different.

**F.      DEFENSE COUNSEL'S ALLEGED FAILURE TO PRESENT EXCULPATORY EVIDENCE AT TRIAL**

Finally, Two Shields contends defense counsel was deficient for failing to investigate or establish exculpatory evidence at trial. Two Shields argues there was no blood found on him, there was no "refuting testimony on probable damage to hands," and there were no "DNA samples of other suspects." See Docket No. 78. Defense counsel elicited important testimony from the police officer who discovered Two Shields lying on the floor in Buffalo Boy's residence, to establish that the officer did not observe blood on Two Shields. Agent Lawrence testified that he did not see blood on Two Shields's hands. Law enforcement officers seized Two Shields's clothing and had it carefully analyzed for blood and DNA. The trial record reveals those tests were inconclusive. The FBI agent who interviewed Two Shields testified he did not notice any injuries to Two Shields's hands. The Government elicited testimony from the FBI agent that Shelly White and Arthur Silk, Jr. were eliminated as suspects because of DNA results. Contrary to Two Shields's claim, there was ample evidence presented at trial that dealt with "exculpatory evidence." It is unreasonable to claim that defense counsel was deficient when all of the evidence Two Shields argues was never investigated and presented at trial was, in actuality, presented to the jury for consideration. Viewing the facts as they existed at the time, defense counsel was not deficient in handling the allegedly exculpatory evidence.

Two Shields contends defense counsel was deficient for failing to present expert testimony about blood spatter, the large quantity of blood in Buffalo Boy's mouth, the force required to inflict the level of injuries sustained, and the use of a weapon. Two Shields has failed to identify any expert witnesses who could have testified on this subject matter at trial, nor what information the expert(s) would have testified about at trial, or how that undisclosed testimony would have affected

the verdicts.  There has been no evidence presented that defense counsel did not explore every potential expert witness who may have aided in Two Shields's defense.  The allegations of ineffectiveness on the part of defense counsel are purely conclusory and wholly unsupported by any evidence in the record.  The Court declines to secondguess defense counsel's trial strategy.

Even if defense counsel was deficient for allegedly failing to investigate exculpatory evidence or call any expert witnesses, Two Shields has failed to show that his defense was prejudiced.  As previously noted, there was overwhelming evidence to convict Two Shields on both counts, and there was insufficient evidence to implicate any other murder suspects.  The Court finds there is not a reasonable probability that, but for any alleged errors by defense counsel, the result of the trial would have been different.  The Court further finds that Two Shields has failed to show that defense counsel's performance was deficient, or if counsel was deficient, that his defense was prejudiced.  Therefore, the fourth ineffective assistance of counsel claim fails.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **DISMISSES** the Defendant's habeas corpus petition filed pursuant to 28 U.S.C. § 2255 (Docket No. 78).  In addition, the Court certifies that an appeal from the denial of this petition may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  Based on the entire record before the Court, the dismissal of the petition is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further

proceedings. <u>See</u> <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983).  Therefore, a certificate of appealability will not be issued by this Court.[1]

If Two Shields desires further review of his 28 U.S.C. § 2255 petition, he may request the issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with <u>Tiedeman v. Benson</u>, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED**.

Dated this 14th day of May, 2009.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

---

[1]The Eighth Circuit Court of Appeals has opined that the district courts possess the authority to issue certificates of appealability under Section 2253(c).  <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997).